That will call the first case 21-4078 DIRTT Environmental Solutions v. Falkbuilt. Council. Good morning. May it please the court. I'm Catherine Miller on behalf of DIRTT, Inc. and DIRTT Ltd. So would you again bring up the microphone, raise it a little bit, and just say as close as you can so that they get a good recording for Judge Bolldorf. Will do, Your Honor. I'd ask that I please reserve four minutes for rebuttal. Okay, so your rebuttal is in your hands. So if you're noticing your time dwindling, you might start looking for a transition point. Will do, thank you. This trade secret misappropriation and Lanham Act case was brought in the only forum in which all eight parties could be joined and where all witnesses and third parties would be subject to compulsory process. Never before has a U.S. plaintiff and its Canadian parent who seek purely U.S. damages arising from U.S. conduct by six defendants, four of whom are American. And they do only seek U.S. damages? That is correct, Your Honor. Based on defendants' aim of setting up a competing national business, and that is specifically alleged in the opening paragraph of the first amended complaint, been told that their case could be more conveniently pursued with respect to half of the defendants in Canada, but that it would be more convenient to litigate the claims against the remaining three defendants in the U.S., even though one of those defendants is specifically alleged to be Falk-Bilt's agents whose actions are inextricably intertwined with the Falk-Bilt defendant's conduct. When further considering that this ruling was made without the benefit of any evidence to support it, it turns the doctrine of forum non-convenience on its head. At base, this is a U.S. action. So what has happened? Is this all being stayed pending the appeal, or has a new case now been filed in Canada with these claims? What's the current status? The current status is that the case is stayed with respect to the Henderson defendants in Utah, based on the fact that there would be duplicative discovery, which was one of our arguments. And was there any new filings in Canada to pick up the defendants that he had said were not going to stay here? Dirt Inc. has joined as a plaintiff in Canada based on... Who has? Dirt Inc., the American plaintiff. Yeah. Has joined in Canada, but there have been no substantive rulings in Canada. It is my understanding that discovery has taken place. As the court may know, in Canada, unless something is a matter of public record, no one is privy to it. So I don't know the contents of deposition testimony or... So if you were successful here, he would presumably drop out of that case and come back and refile here? Yes, Your Honor. Because based on... Dirt Inc. is an American plaintiff, and based on the conduct alleged, and based on the sources of discovery, and especially the third parties, all of whom are in the States, Dirt would definitely prefer to be here. It is only in Canada right now in order to protect its interests. My other question, I don't want to interrupt your flow and you keep your argument exactly the way you planned it, but sometime during your argument, I would like to have you discuss the precedent that discusses bifurcation of a forum non-convenience, keeping some of the parties and transferring others out. I found very little precedent, and what was cited I found very marginal. So I don't want you to have a long discussion of it, maybe just the case names that you think are most persuasive for you, and if you feel there's any cases really on point, let me know, because my study of it suggested very limited legal authority on that critical issue. Well, Your Honor, to that point, that is actually... I've limited my, based on time, I've limited my arguments to three, and the first one is the unprecedented decision to split up the defendants, split up the cases, and so I will go ahead and address that now. So as the court may know, Dirt cited a Fifth Circuit case, Baumgart, and a Southern District of Texas case, McClellan, for the proposition that a forum is available when the entire case and all the parties can come within the jurisdiction of the court. That is obviously not the case here. Lance Henderson, Christy Henderson, and Falk Mountain States specifically refused to be sued in Canada, leading to the split. In response, the Falkville defendants dropped a footnote and said they're aware of any binding precedent on this point. That's true, but what you didn't hear from the Falkville defendants is any case other than this one, where under an analysis premised upon convenience and judicial economy, a case has been split in two. So one proceeds in one forum, and now it's proceeding in two forums in two different countries, with a lot of the discovery and the witnesses remaining the same between the two cases. And this I contend, and Your Honor, I agree with you that we were unable to find any other case where this has happened. So just those two that you are aware of? Well, it discusses the availability of a forum, and that if all parties are not available... Yes, just those two. I thought there was a third one too, but maybe not. Well, I can tell you, Your Honor, in Yavuz, Yavuz raised the issue that three of the defendants were not amenable to service, and so therefore the forum was unavailable. That's a Tenth Circuit case. In that case, however, the court noted that one of the defendant's attorneys represented that he was in fact amenable to process, and that the plaintiff had failed to serve the other two defendants at all, and so they weren't before the court, and so that couldn't serve as a basis. So there's no substantive ruling there, but that was the only other case where this issue has been addressed that we could find. So the short answer is, is there's no other case where the claims have been split, with some of them being sent to a foreign jurisdiction, and some of them being kept in the U.S. District Court. Correct, which from our perspective makes complete sense, that this would never have happened, because it's wholly at odds with having an analysis on the basis of convenience, that you're now going to divide things and make things twice as difficult, and have them proceed in two different countries. I didn't read the briefing in the District Court, but was this argued before the judge, or was this kind of on the judge's own claim, own idea? I'm sorry, your honor, which part? Splitting, splitting, some say and some go. Was this the judge's idea, or was it argued by you? To our knowledge, he said that it shouldn't happen, and we pointed out that the Henderson defendants did not agree to go to Canada. So this was the judge's own doing to split the parties and send them. That was my question, was the judge's own idea to do that? Yes, he found that the claims against the Henderson defendants were narrowly tailored to be held in, to be dealt with in Utah. Thank you. Okay, go ahead. Second, the U.S. Canadian, the U.S. and Canadian actions, which are different lawsuits, should not have been equated as being the same, nor does this constitute a legal reason supporting dismissal, or a factor of any forum non-convenience test, but because the District Court focused on this, we believe it bears addressing. Let me, let me, before you do that, if I set the Canadian  U.S. complaint side by side, what am I, what's going to be different, other than parties? In addition to the parties, and actually I can get into my argument, because that's where I'm going, you guys are. First, the parties, obviously, and there are substantive differences there with respect to the Canadian action, the individual defendants in that case are former Canadian employees. Lance Henderson was a former U.S. Dirt, Inc. based employee. The actions involve different theories. The Canadian action seeks recoveries based on breaches of contracts and breaches of fiduciary duties, whereas the Utah action alleges six U.S. statutory causes of action based upon conduct occurring in the U.S. The Lanham Act claim... That only addresses Utah statutes, it's not, there's no other claims in there? There are four state statutory claims, so it's not just Utah, but in addition to those four state statutory claims, there's a Lanham Act claim and a Federal Defend Trade Secret Act claim, and then against Lance Henderson, who's not at issue here, there is a breach of contract claim against him, but the other claims are the only ones pending against the Falkville defendants. Okay, so the Canadian action would have a breach of contract claim, but not against Henderson, it would be against Canadian citizens? Correct. All right, and in the U.S. there's no contract claim against any Canadian citizens or Canadian companies? Correct. All right. So the Lanham Act claim stems solely from misrepresentations in the U.S., leading to market confusion in the U.S., and while we acknowledge that under the Federal Defend Trade Secret Act claim, it could include international commerce, the First Amendment complaint specifically limits recovery to interstate commerce. DIRT has also attached a list of projects that are at issue in the Utah case, and those are all American projects. There are no Canadian projects identified. Third, different relief is sought. It is true that both the Canadian action and the American action seek injunctive relief. However, a Canadian court can't enforce a Canadian injunction in the U.S. against U.S. individuals and entities. Now, there is a precedent that we don't reject transfer for former just because the remedies might be different in the new form. Do you think this disparate treatment of remedies or availability of remedies is sufficiently great that that would kind of overcome that precedent? Your Honor, I understand that the remedy sought isn't looked at when we're looking at the causes of action. I'm addressing it here because I think it really goes more to the factor of the remedy being inadequate in the alternate forum. And we've seen that here because while the Falkvilt defendants said that enforcement of a Canadian injunction in the U.S. would be routine, and there was nothing that would indicate that they would fight enforcement of it, with the benefit of time, we now know that when we sought to enforce the Canadian injunction in the U.S., they objected. And so now there is no injunction pending. Well, we don't look at, we don't compare the remedies, but you're saying if one remedy is inadequate, that is the same as saying that there is no other available form. I think it's the same as saying that there is no adequate remedy available in the forum, which is something that's looked to in the forum non-convenience analysis. All right. Thank you. Okay. And I am going to reserve my remaining time for rebuttal. Okay. Thank you. Good morning. May it please the court. My name is Artemis Vamianakis on behalf of the Appalese. I'm here today with my co-counsel Tanner Bean, but I will be the only one arguing on behalf of Appalese today. Your Honors, this case turns on the applicable standard of review. Based on the Supreme Court precedent in Piper and on all of the tens of the many 10th Circuit cases cited by the parties in the briefing, the applicable standard of review is a clear abuse of discretion where the judge has taken into consideration all of the relevant private and public interest factors and where the balancing of those factors is reasonable. But if they're not reasonable because there was no evidence taken about inconvenience, about nobody testified, we are going to call these witnesses or not. They're simply lawyer representations. So is it reasonable to say, make any evidentiary rulings by the district court when he took no evidence whatsoever? Your Honor, based on the Supreme Court precedent in Piper, Judge Barlow was not required to conduct an evidentiary hearing or to only take into consideration evidence that came in through declarations or sworn affidavits. According to information. Well, but the information here is not from, correct me if I'm wrong, I could very well be wrong because I didn't study the record, but is it, are there affidavits, sworn affidavits, or is it simply statements in briefs, which we've said over and over, is not evidence? There were no declarations or affidavits from either side. So here we've got a court making findings of what's convenient with absolutely no record evidence to support those findings. But again, Your Honor, under Piper and as applied in the other 10th Circuit precedent, declarations and sworn affidavits are not required. The information... No, not if there's not a disputed fact, but here, here those facts are very much challenged and disputed. How's the court going to decide that question without evidence? Your Honor, the court reviewed the allegations as presented by DIRT and accepted those as true for purposes of this motion to dismiss. And it also reviewed the, so it reviewed the allegations in the complaint. Did the court say, I accept all of the factual statements made by the parties that do not want the forum non-convenience to be granted? I do not believe that the judge said that, Your Honor. Okay, thank you. Yeah. What the judge had before him were the allegations in the of claim brought in Canada. It had DIRT's own exhibits that were attached to the complaint, which all of this was evidence of the case that DIRT was bringing against Falkville, the allegations, the witnesses, and which court was the appropriate forum to hear the larger dispute. DIRT had brought a case in Canada first against Falkville, Canada and Mr. Smedd. And ultimately the court found that the best evidence and that it had sufficient information in order to do the conduct the weighing based on the way that the allegations in the case were presented and the information about the witnesses. Another thing that the judge had before him, was DIRT's own motion to compel. At some point during the litigation, DIRT sought to compel evidence from Falkville's Canadian employees. It said that this evidence was important and necessary so that DIRT can litigate these claims in the District of Utah because it was the Falkville's Canadian conduct that was at issue. It wasn't just conduct of Falkville in the United States. If you agree that the allegations in the Utah case only allege U.S., did it only allege U.S. misconduct or did it only allege U.S. damages? Your Honor, I argue that it was broader than just the U.S. and that's what Judge Barlow found as well. You don't dispute that it only alleges U.S. damages? I do dispute that, Your Honor. You do dispute that? Yes, Your Honor. And you do dispute that it only alleges U.S. conduct? Yes, Your Honor, as did Judge Barlow. He found that the Utah action was much broader. It was not limited to conduct or to damages in the United States and indeed the Canadian action was also not limited to Canadian conduct or damages for actions in Canada. He found that there was significant overlap based on his review of DIRT's own allegations and the exhibits and looking at those two side by side. He found that there was significant overlap and it was not limited to U.S. damage or U.S. injury. And in any event, those two claims that DIRT argues over and over again are not the only factors that go into a form non-convenience analysis. Whether or not what we call DIRT U.S. is truly a U.S. company, whether or not they are in the U.S., that's not the only things that bear on the multi-step analysis of forum non-convenience. So let me ask you a question about that. So when we're reviewing, when a court's looking at a forum non-convenience case, do they consider the convenience just to the party that wants to move it or do they consider the convenience to the party that wants to keep it in place? I think the court considers the convenience on both sides. Okay, and that would make sense because you start out with the presumption that the plaintiff gets to pick the forum, so long as there's jurisdiction. And assuming that it's the plaintiff's home forum, that is deserving of some level of deference. Yes, Your Honor. Okay. So is it your position there's no deference if it's not their home forum? It is deserving of less deference according to the ultimately found here as well, Your Honor. Okay. Is it an appropriate consideration that if you split the case in two, that the same case is going to have to be tried in Canada and the U.S.? That is a consideration, Your Honor. And Judge Barlow determined that the claims against the Utah defendants were, as Ms. Miller noted, were narrowly tailored and distinct. And I wanted to let me keep going there before we switch topics. Certainly. Is Mr. Smed subject to subpoena in Utah? He would be, Your Honor. Okay. And how would we enforce that against him if he was subpoenaed and just didn't want to show up? If he was subpoenaed in the... In the Utah action? In the Utah action. Well, he was the named defendant in the Utah action. Right. Well, he's been kicked out of that action. He's been sent to... He's been told he gets to litigate in Canada. Oh, certainly. Yes. And he's a Canadian citizen, right? Yes. He lives in Canada. Yes. Canadian citizen, mastermind that's in Canada. Right. So as the court noted, a default bill argued below, there is a process in the United States under 28 U.S.C. 1782, by which a court here in the United States could compel testimony and documents from an unwilling witness in Canada. Okay. So that there is that process. I wanted to touch... Well, and the court doesn't have jurisdiction... The Utah court has jurisdiction. Somehow it was a cheap service on Smed. Yes, Your Honor. So there's no question about the Yes, Your Honor. Yes. Okay. Now let me ask you another question. So, because presumably we're talking about the same thing in both courts, because half of this case on the same facts has been sent to Canada. Does the Canadian court have the ability to bring the Hendersons to Canada to testify? I'm not aware of a similar process. We're not aware of a similar process like there was in Canada. And what consideration, if any, should we give to the possibility that if these cases proceed on separate tracks, one in Canada and one in the U.S., that we could have different results with one forum having a positive result for the plaintiff and one forum having a defense verdict? And just to be clear, you're talking about the case against what I would call the action in Canada, Your Honor? Yes. So, because half of this case was, it was all one case and half of it was sent based on convenience of the parties up to Canada, what do we do if we have inconsistent results or the possibility of inconsistent results? The possibility of inconsistent results certainly weighs in this court's analysis under, I would say, the public interest factors. But, Your Honor, we would have the possibility of inconsistent results should this case, should this court unwind what Judge Barlow did as well. Because, again, he found that there was significant overlap between the two proceedings. And if, again, this court unwinds it and sends it back to Utah to litigate, we will have two courts looking at, for example, Mr. Smed's conduct. In both actions, Dirt is alleging that Mr. Smed is this mastermind who was the former head of one entity, broke off, stole trade secrets, and formed his own competing business. That conduct would be at issue in both of these parallel proceedings if this court were to unwind Judge Barlow's information. In the first court to decide, maybe the Canadian court against Smed, would that be res judicata against Mr. Smed in Utah if he were retained in Utah? I believe so. I mean, that would be one of the difficulties of having... Would it be res judicata against, if it was favorable to Smed, would it be res judicata against the Utah plaintiffs who were not in Canada? I believe so. And that's one of the complicating factors. That surprises me. I'm sorry. I would not have given that. I'm not sure that that's right, but you think so. Do you have a case on that? I don't have one off the top of my head. Okay. But you must have seen one at some point to counsel your answer. I certainly must have seen one. And I will defer to the cases if we've addressed. I don't recall if we've addressed that specific issue in the briefing. And if we did, I will defer to what we argued rather than my memory right now, Your Honor. Let me ask you about injunctive relief. So in Utah, it seems like part of what was going on, there was an argument that, hey, we have an injunction in place here. If you send us to Canada, there's no injunction. There's no protecting us through injunctive relief. And sort of the court and the parties sort of in discussion say, well, we'll all just agree to an injunction in Canada. Is that fair statement of what happened? Yeah. So the parties agreed to a stipulated injunction in Utah to preserve the status quo. Right. Within 28 days, we're going to tell them what we have and we agree not to use anything. And that injunction is currently in place in the Canadian action. Right. But that injunction that's in place in Canada doesn't flow against the Hendersons. And that is a question- I mean, they're not a party. How can the court enjoin someone who's not a party? And the interesting thing for me, Your Honor, the court in Utah hasn't vacated the preliminary injunction. The case is dismissed, though, isn't it? The case against the Dirt defendants is dismissed, but it is ongoing against the Hendersons in Utah. Okay. All right. Let's talk a little bit about the Texas proceeding that you don't think is appropriate to talk about. And you may be right. But so in Texas, your client contested the idea that an injunction should be, like the Canadian injunction, should be recognized and entered in the U.S. Is that fair? Your Honor, how I would characterize it is, okay, so we have the entire cause, the entire complaint essentially brought against them again in Texas. As part of contesting all of that, pardon me, Falk built moved to dismiss because, again, they brought the same case against them just in Texas. While that motion to dismiss for forum nonconvenience was pending, opposing counsel came to Falk built and said, hey, will you enter this injunction? And Falk built said, this is premature. We have a pending motion to dismiss for forum nonconvenience. Should this court deny our motion, let's talk about it and make sure that this injunction can get entered here. Falk built wasn't trying to say, look, this injunction is not enforceable in the United States. Okay. Well, I mean, the fact of it is, though, and we're going to, I'm going to use up your time here. And if Judge Ebell is willing, I'm going to give you some more. But... The answer is I'm always willing. Whatever my presiding judge wants to do, I'm in favor of. So if you can get the case dismissed every time they bring it up, which presumably you're going to be, you know, you're not going to get a U.S. court now to bite on the idea, or they're not, that their case ought to be able to be refiled and go forward in its entirety, then you're never going to agree to an injunction. There's never going to be an injunction entered. I would disagree, Your Honor. If they had brought a miscellaneous action for violations of this preliminary injunction, let's say if they found that someone had been misusing trade secrets and they had actual evidence of that, it would be a different case. What if they brought a mis... So injunctions are often entered even when nobody's engaged in offending conduct. So there can be a situation where someone was engaged in offending conduct, and they have quit under specter of being sued, and someone seeks an injunction against them and says they were offending, we want to enjoin them to make sure they don't offend anymore. And that happens all the time. So, I mean, you don't, they don't have to come in, you know, they, it just seems to me that it's there, and I'm not limiting this to you, to your client, that there's a bit of gamesmanship going on about agreeing to things but not really agreeing to them, having your case dismissed and going and filing the same case in a different U.S. forum, even though it's, your case has already been dismissed and sent up to Canada. I mean, it just seems that we've got a bit of that going on. And so, I mean, if they filed a miscellaneous action and said, we want to, for lack of better terms, domesticate our Canadian injunction here in the U.S. and have you, Judge Godby, in the Northern District of Texas enter it, I mean, would that be something that you think's improper without a showing that your client's engaged in offending conduct? I don't think that that would be something that would be improper, Your Honor. If we've got a Canadian injunction, you know, the, those judgments and foreign judgments are recognized and enforced in the United States all the time. I'm not sure I, if I end on your question, Your Honor. I mean, fair enough. That's, I think you answered me. Yeah. Judge Evelin, do you have anything more? Okay. Do you want to, I'll give you a second to conclude if, more than a second, obviously, if you'd like to. Oh, certainly, Your Honor. Thank you for that. I, we respectfully ask that this Court find that there was no clear abuse of discretion here. The Court worked through carefully all of the factors and balanced the evidence that was to conduct that balancing and ultimately find that these, these claims were best sought in Canada and that Canada was the appropriate forum to hear this larger dispute. That was the first filed action. There was significant overlap and the case between these defendants and those plaintiffs should all be brought in one forum and proceed in the appropriate forum in Canada. Okay. Thank you, Counsel. Thank you, Your Honor. Let's give Ms. Miller another two minutes. So, first off, Dirt, Inc., not a plaintiff in the Canadian action. First filing that Dirt, Inc. made was in Utah. The only point in time at which Dirt, Inc. became a party to the Canadian lawsuit was after the District Court's ruling here. Are you speaking about Dirt USA? Yes, I am. Yes. I'll refer to it as Dirt U.S. Canada too. The Dirt Limited is the parent, is the parent company in Canada. Dirt Limited was the only plaintiff in Canada. But in the U.S., the only Dirt person was the company was the Dirt USA. Correct. Also, with respect to Piper Aircraft, Piper Aircraft placed great weight on having all parties with potential liability in one forum. That cannot happen here. Also talked about the evidence supporting the District Court's ruling. I have a list of about a dozen things that the District Court found that aren't supported by the evidence and I'll hit upon the high points given my limited time. First of all, the District Court found that it appears likely that the primary conduct causing the injury occurred in Canada. There is not a single specific allegation in the First Amendment Complaint of Canadian misappropriation. That the place where the relationship began was Canada. The First Amendment Complaint alleges that it was Lance Henderson's theft of information in the U.S. that kicked off the U.S. litigation. Dirt then subsequently conducted a forensic investigation and learned of other dirt theft in the U.S. Amanda Wachinsky, who lives in Pittsburgh, is specifically identified in the complaint and that it is the misuse of the information in the U.S. that forms the basis for the claims in the U.S. Assuming that the information had been stolen and locked up in someone safe and never used, this may be a much different case. The conduct that caused the injury is the misappropriation, the misuse to compete in the U.S. Could that claim be brought in Canada? Could Dirt U.S. be a party in Canada and bring those claims in Canada if it wished to? Theoretically, yes, but when you're looking at an analysis that's based on convenience, I don't know how it could ever be said that it's convenient to try to seek discovery and depositions based entirely on U.S. conduct in a foreign forum. But you think the foreign forum might have jurisdiction over that, even though, in other words, a foreign forum could just have jurisdiction over any foreign company bringing foreign claims just because they say we like the Canadian weather? Well, and I think it's a different analysis, too, whether you have jurisdiction or whether it's a convenient forum. You know, one of the things that Rivendell finds... Well, my question is the more fundamental, is there even jurisdiction? What if someday Joe Schmoe from Idaho went up to Canada and said, I got a fight against my neighbor about their fence and we've got a vacation lodge there in Canada? I would say potentially based on the fact that you added he owns property in Canada. But here, I mean, we know obviously that Dirt, Inc. can be a plaintiff in Canada because it has joined the suit in light of the district court's decision, but we also know that the Hendersons, whose conduct is front and center and an issue in the Utah action, can't be in Canada and has specifically refused to be in Canada. Well, and that was the ruling of the district judge here, too, right? The reason he didn't transfer out the entire case was because he didn't think they could be brought in. Well, the Hendersons actually specifically refused to be sued in Canada. Well, but I mean, refusing to be served isn't necessarily a definitive response, but the court must have agreed with them that you couldn't be sued against your will. Correct. And yeah, and other courts have found that there are certain parties who wouldn't be The district court also found that Dirt, Ltd. originally employed the employees who are alleged to have stolen information. Lance Henderson is specifically alleged to be an employee of Dirt, U.S. Amanda Wachinsky was an employee of Dirt, U.S. There was a finding that discovery would be more easily obtained in Canada. There's simply no evidence of that, and in fact, to the point with the motion to compel, and I see that I'm at my time. Go ahead and wrap up. The district court, the magistrate judge actually found that Dirt was entitled to that discovery in order to pursue its claims in Utah. The court in Rivendell established that a district court abuses its discretion if the record does not contain substantial reasons why the forum is more convenient. Dirt submits that there are not substantial reasons here that support the splitting of the parties and sending half of the case to Utah, and that's simply unsupported and not based on any evidence, and we would ask that you reverse. Thanks, counsel. You're out of time. Thank you. Appreciate everyone's arguments today. They were both well done and very helpful and interesting case. The case will be submitted and counsel are excused.